















```
PLA    8/13/02    15:57
3:02-M -01908   USA V. BIDDICK
*1*
*CRCMP.*
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA            '02 AUG 1903

02 AUG 13 PM 2:06

COPY U.S. DISTRICT COURT

Magistrate's Docket No.
Case No.

The accused __Bruce Alan Biddick__, now presented before __Hon. Cynthia Aaron__ DEPUTY, United States Magistrate Judge, for arraignment and fixing of bail, has been charged by a federal grand jury by way of an indictment in the __Southern__ District of __Florida__ at __Miami__, on __06/20/2002__, with the offense of __Conspiracy, Wire, Mail, and Securities Fraud__ in violation of Title __18__, United States Code, Section __1346, 1343, 1341, 371, 2 and 15 USC 78j(b) and 17 CFR 240.10b-5__. An arrest warrant was issued on __6/20/2002__.

Bond in the sum of __$200,000. P.S.B. - signed by 2 persons - 10% cash deposited in Ct. registry.__ has been recommended, in the district in which the charges are pending.

DATED: __8/13/2002__.

__William E Dayhoff__
Affiant

__Special Agent, FBI__
Title

Lodged with me this __13th__ day of __August__, 20__02__, in lieu of certified copy of the indictment against the accused.

__Cynthia J. Aaron__
HON.
United States Magistrate Judge

SWH/ves:072100

AO 442 (Rev. 5/93) Warrant for Arrest                               FBI-46917-8

# United States District Court

SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

DANIEL BENDER
BRUCE A. BIDDICK

**WARRANT FOR ARREST**

CASE NUMBER: 02-20538-CR-GRAHAM

MAGISTRATE JUDGE GARBER

"SEALED INDICTMENT"

To: The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest ___BRUCE A. BIDDICK___
Name

and bring him or her forthwith to the nearest magistrate judge to answer a(n)

☒ Indictment  ☐ Information  ☐ Complaint  ☐ Order of court  ☐ Violation Notice  ☐ Probation Violation Petition

charging him or her with (brief description of offense)
CONSPIRACY, WIRE, MAIL AND SECURITIES FRAUD

SOUTHERN DISTRICT OF FLORIDA WARRANTS
2002 JUN 24 AM 7:11
RECEIVED UNITED STATES MARSHAL

in violation of Title ___18/15___ United States Code, Section(s) ___1346, 1343, 1341, 371 & 2/78j(b), 78ff(a)___

Clarence Maddox
Name of Issuing Officer

/s/ Matthew Fitzpatrick
Signature of Issuing Officer

Court Administrator ● Clerk of Court
Title of Issuing Officer

6-20-02  Miami
Date and Location

Bail fixed at $ ___200,000 PSB___   by   ___TED E. BANDSTRA___
Name of Judicial Officer

## RETURN

This warrant was received and executed with the arrest of the above-named defendant at _____

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST | | |

This form was electronically produced by Elite Federal Forms, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

02-20538 CR-GRAHAM

CASE NO._____

18 U.S.C. § 1346
18 U.S.C. § 1343
18 U.S.C. § 1341
18 U.S.C. § 371
18 U.S.C. § 2
15 U.S.C. § 78j(b)
17 C.F.R. § 240.10b-5

MAGISTRATE JUDGE
GARBER

FILED by _____ D.C.
MAG. SEC.

JUN 26 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

UNITED STATES OF AMERICA     )
                             )
v.                           )
                             )
DANIEL BENDER                )
and                          )
BRUCE A. BIDDICK,            )
                             )
             Defendants.     )
_____)

INDICTMENT

The Grand Jury charges that:

## COUNT 1

### CONSPIRACY TO COMMIT WIRE, MAIL AND SECURITIES FRAUD

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. Digital Concepts International, Inc., ("DCII") was a Florida corporation with its principal place of business in Valley Center, California. The common stock of DCII was publicly traded in the United States on the over-the-counter market. DCII was purportedly in the business of providing Pay TV entertainment systems and hi-speed Internet systems to major hotels.

2. DCII was an over-the-counter market ("OTC") stock with 50 million authorized shares. The OTC is a market for equity securities traded over-the-counter that are neither listed on

NASDAQ nor on a primary national securities exchange.

3.  Defendant **DANIEL BENDER** was President, Chief Executive Officer and Director of DCII.

4.  Centex Securities, Inc. ("Centex") was a securities broker-dealer registered with the U. S. Securities and Exchange Commission and a member of the National Association of Securities Dealers, Inc. Centex had its principal place of business in La Jolla, California.

5.  Defendant **BRUCE A. BIDDICK** was an owner, registered principal and a securities broker at Centex.

6.  An agent of the Federal Bureau of Investigation, acting in an undercover capacity (the "UCA"), posed as a corrupt securities trader employed by Connelly & Williams Associates, Inc. ("Connelly & Williams"), the United States-based representative of a fictitious foreign mutual fund ("the Fund") that had a number of investors who had invested millions of dollars. In his role as an undercover agent, the UCA claimed that he worked at Connelly & Williams with two due diligence officers whose job was to research and approve which securities the UCA would be allowed to purchase through Connelly & Williams on behalf of the Fund's investors. The UCA also claimed that a purported manager of the Fund was corrupt and had knowledge of the UCA's corrupt activities concerning the Fund.

7.  Two cooperating witnesses (collectively, the "CWs") also assisted in the undercover operation, posing as corrupt stock promoters who presented prospective stock purchase deals to the Fund through the UCA.

8.  Southern Star Shipping, Ltd. ("Southern Star Shipping") was the offshore Swiss entity that was purportedly used by the UCA and CWs to receive payments of illegal kickbacks.

## THE CONSPIRACY

9. From in or about January 2001, to in or about August 2001, at Miami-Dade County and Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**DANIEL BENDER
and
BRUCE A. BIDDICK,**

did knowingly and willfully combine, conspire, confederate and agree with each other and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, namely:

    a. wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346;

    b. mail fraud, in violation of Title 18, United States Code, Sections 1341 and 1346; and

    c. securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5.

## PURPOSE AND OBJECT OF THE CONSPIRACY

10. It was the purpose and object of the conspiracy for the defendants to unjustly enrich themselves by defrauding the Fund through paying undisclosed kickbacks to the UCA, CWs, a purported corrupt Fund manager and two purported due diligence officers of Connelly & Williams, in exchange for their causing the Fund to purchase a large amount of overpriced DCII stock.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants sought to accomplish the object of the conspiracy included, among others, the following:

11. Defendants **DANIEL BENDER** and **BRUCE A. BIDDICK** agreed to arrange for the payment of undisclosed kickbacks to the UCA and others at the Fund to violate their fiduciary

3

obligations by buying a large amount of overpriced DCII stock from DCII with the Fund's money.

12. Defendants **DANIEL BENDER** and **BRUCE A. BIDDICK** agreed to arrange for the sale by DCII of approximately 1,000,000 shares of DCII stock at $5.00/share (totaling $5,000,000) to Connelly & Williams, on behalf of the Fund. At the time, the prevailing market price of DCII stock was approximately $3.00/share. The Fund was to purchase these shares in two separate transactions.

13. Defendants **DANIEL BENDER** and **BRUCE A. BIDDICK** agreed to arrange for the UCA, CWs and a purported corrupt manager of the Fund to receive $2,000,000 (40%) of the $5,000,000 in proceeds from the Fund's DCII stock purchase as an undisclosed kickback for inducing the Fund's purchase of overpriced DCII stock. Defendant **BRUCE BIDDICK** would in turn receive $400,000 of the $2,000,000 undisclosed kickback payment for his role in this DCII stock purchase by the Fund.

14. Defendants **DANIEL BENDER** and **BRUCE A. BIDDICK** agreed to conceal the $2,000,000 undisclosed kickback payment to the UCA, CWs and the purported corrupt Fund manager by wiring it to an offshore bank account in the name of Southern Star Shipping.

15. Defendants **DANIEL BENDER** and **BRUCE A. BIDDICK** agreed to have DCII enter into a sham consulting agreement with Southern Star Shipping in order to disguise the $2,000,000 kickback.

16. Defendants **DANIEL BENDER** and **BRUCE A. BIDDICK** agreed to complete a "test" trade of a smaller amount of DCII stock in order to get DCII placed on the Fund's list of stocks approved for purchase, which then would allow the UCA to execute the larger $5,000,000 DCII stock trade at a later date.

17. As part of this "test" trade, defendants **DANIEL BENDER** and **BRUCE A. BIDDICK** agreed to sell to the Fund, through Connelly & Williams, 4,000 shares of DCII stock at

4

$5.00/share (totaling $20,000), and send an undisclosed kickback payment of $10,000 to the UCA for further transfer to the two purported due diligence officers of Connelly & Williams in exchange for their placing DCII stock on the Fund's list of stocks approved for purchase.

18. Defendants **DANIEL BENDER** and **BRUCE A. BIDDICK** agreed to conceal the "test" trade $10,000 undisclosed kickback payment to the UCA by recording this payment on DCII's books as a fee for purported consulting services provided by the UCA to DCII.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the objects thereof, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

19. On or about January 30, 2001, during an interstate telephone call, defendant **BRUCE A. BIDDICK** proposed to the UCA and CWs that the Fund purchase shares of DCII stock.

20. On or about April 4, 2001, defendant **BRUCE A. BIDDICK** met with the UCA and CWs and proposed that the Fund purchase shares of DCII stock in exchange for payment of an undisclosed kickback to the UCA, CWs and a purported corrupt Fund manager. Defendant **BRUCE A. BIDDICK** also proposed that for his role in this DCII stock deal he be paid a portion of the undisclosed kickback paid to the UCA, CWs and a purported corrupt Fund manager.

21. On or about April 11, 2001, during an interstate telephone call, defendants **DANIEL BENDER** and **BRUCE A. BIDDICK** discussed with the UCA and CWs how the Fund would purchase 1,000,000 shares of DCII stock at $5.00/share directly from DCII for a total of $5,000,000 in exchange for which defendant **DANIEL BENDER** would then make an undisclosed kickback payment of $2,000,000 to the UCA, CWs and a purported corrupt Fund manager.

22. On or about April 12, 2001, during an interstate telephone call, defendants **DANIEL BENDER** and **BRUCE A. BIDDICK** discussed and agreed to perform a "test" trade involving the

5

Fund's purchase of 4,000 shares of DCII stock and the subsequent undisclosed kickback payment of $10,000 to the UCA for further transfer to the two purported due diligence officers of Connelly & Williams in exchange for their placing DCII stock on the Fund's list of stocks approved for purchase.

23. On or about April 16, 2001, during an interstate telephone call, defendant **BRUCE A. BIDDICK** discussed with one of the CWs the agreement between defendant **BRUCE A. BIDDICK** and the UCA and CWs whereby they would pay defendant **BRUCE A. BIDDICK** 20% ($400,000) of the $2,000,000 undisclosed kickback payment that they would receive from defendant **DANIEL BENDER** in return for the Fund purchasing 1,000,000 million shares of DCII stock.

24. On or about April 17, 2001, defendants **DANIEL BENDER** and **BRUCE A. BIDDICK** prepared and sent to the UCA and CWs proposed stock purchase agreements reflecting the sale by DCII to the Fund of an initial "test" trade of 4,000 shares at $5.00/share and the subsequent sales of 1,000,000 shares at $5.00/share.

25. On or about April 17, 2001, during an interstate telephone call, defendants **DANIEL BENDER** and **BRUCE A. BIDDICK** discussed with the UCA and CWs the method of concealing the undisclosed kickback payment of $2,000,000 to the UCA, CWs and a purported corrupt Fund manager following DCII's sale of 1,000,000 shares of stock at $5.00/share to the Fund.

26. On or about April 17, 2001, during an interstate telephone call, defendants **DANIEL BENDER** and **BRUCE A. BIDDICK** discussed with the UCA and CWs the drafting of a "Consulting Agreement" between DCII and Southern Star Shipping in order to disguise the undisclosed kickback payment as a payment for "consulting services."

27. On or about April 20, 2001, during an interstate telephone call, defendant **DANIEL BENDER** advised the CWs that a DCII stock certificate for 4,000 shares had been issued in the name of Connelly & Williams representing the shares to be purchased by the Fund as the agreed

6

initial "test" trade.

28. On or about April 23, 2001, defendants **DANIEL BENDER** and **BRUCE A. BIDDICK** caused the UCA to wire-transfer $20,000 to DCII's bank account in California for the Fund's purchase of 4,000 shares of DCII stock at $5.00/share, the "test" trade.

29. On or about April 24, 2001, defendant **DANIEL BENDER** sent to the UCA an original DCII stock certificate for the 4,000 shares purchased by the Fund.

30. On or about April 24, 2001, defendants **DANIEL BENDER** and **BRUCE A. BIDDICK** caused $10,000 to be wire-transferred to the UCA's bank account to serve as the undisclosed kickback payment to the Fund's two purported due diligence officers in exchange for their placing DCII stock on the Fund's list of stocks approved for purchase.

31. The wire communications, as set forth in Counts 2 through 6 of this Indictment, the mailing, as set forth in Count 7 of this Indictment, and the securities transaction, as set forth in Count 8 of this Indictment, are incorporated herein and realleged as though restated as individual overt acts done in furtherance of the conspiracy.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2-6

## WIRE FRAUD

1. The allegations of paragraphs 1 through 8 and 11 through 31 of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. From in or about January 2001, to in or about August 2001, at Miami-Dade County and Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**DANIEL BENDER**
and
**BRUCE A. BIDDICK,**

did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and deprive

7

others of the intangible right of honest services, and to obtain money and property from others by means of materially false and fraudulent pretenses, representations and promises, knowing that the pretenses, representations and promises were false when made.

3.  On or about the dates specified as to each count, the defendants, for the purpose of executing the aforesaid scheme and artifice to defraud and deprive others of the intangible right of honest services, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, as more particularly described in each count below:

| COUNT | APPROX. DATE | ORIGIN | DESTINATION | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|---|
| 2 | 4/6/01 | California | Boca Raton, Florida | Fax copy of DCII's financial statements |
| 3 | 4/17/01 | California | Boca Raton, Florida | Fax copy of stock purchase agreements between DCII (the seller) and Connelly & Williams (the purchaser) |
| 4 | 4/17/01 | California | Boca Raton, Florida | Fax copy of DCII's bank account wire instructions |
| 5 | 4/19/01 | California | Boca Raton, Florida | Fax copy of DCII stock certificate for 4,000 shares issued to Connelly & Williams |
| 6 | 4/24/01 | California | Miami, Florida | Bank wire-transfer of $10,000 "test" trade undisclosed kickback to the UCA's bank account |

All in violation of Title 18, United States Code, Sections 1343, 1346 and 2.

## COUNT 7

## MAIL FRAUD

1. The allegations of paragraphs 1 through 8 and 11 through 31 of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. From in or about January 2001, to in or about August 2001, at Miami-Dade County and Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**DANIEL BENDER
and
BRUCE A. BIDDICK,**

did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and deprive others of the intangible right of honest services, and to obtain money and property from others by means of materially false and fraudulent pretenses, representations and promises, knowing that the pretenses, representations and promises were false when made.

3. On or about April 24, 2001, the defendants, for the purpose of executing the aforesaid scheme and artifice to defraud and deprive others of the intangible right of honest services, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, and attempting to do so, did knowingly cause to be delivered by commercial interstate carrier, that is FedEx, according to the directions thereon, a stock certificate number 2150 for 4,000 shares of Digital Concepts International, Inc. in the name of "Connelly & Williams."

All in violation of Title 18, United States Code, Sections 1341, 1346 and 2.

## COUNT 8

## SECURITIES FRAUD

1. The allegations of paragraphs 1 through 8 and 11 through 31 of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. From in or about January 2001, to in or about April 2001, at Miami-Dade County and

Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**DANIEL BENDER**
**and**
**BRUCE A. BIDDICK,**

knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, did, directly and indirectly, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of a security, that is, 4,000 shares of stock in Digital Concepts International, Inc. (DCII) to "Connelly & Williams Associates, Inc." and did (a) employ a device, scheme and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices and courses of business which would and did operate as a fraud and deceit upon others, in connection with the purchase and sale of said securities.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a); Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.

A TRUE BILL

_____
FOREPERSON

_____
GUY A. LEWIS
UNITED STATES ATTORNEY

_____
ERIC I. BUSTILLO
ASSISTANT UNITED STATES ATTORNEY

10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

02- 20538 - CR - GRAHAM

UNITED STATES OF AMERICA CASE NO.

v.

DANIEL BENDER, et al.,
_____/

CERTIFICATE OF TRIAL ATTORNEY*

Superseding Case Information: **MAGISTRATE JUDGE**
**GARBER**

New Defendant(s) Yes ___ No ___
Number of New Defendants ___
Total number of counts ___

FILED by ___ D.C.
MAG. SEC.

JUN 20 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.

Court Division: (Select One)

 X  Miami ___ Key West
___ FTL ___ WPB ___ FTP

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No) __No__
   List language and/or dialect _____

4. This case will take __12__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)   (Check only one)

   I    0 to 5 days      ___        Petty    ___
   II   6 to 10 days     ___        Minor    ___
   III  11 to 20 days     X         Misdem.  ___
   IV   21 to 60 days    ___        Felony    X
   V    61 days and over ___

6. Has this case been previously filed in this District Court? (Yes or No) __No__
   If yes:
   Judge: _____ Case No. _____
   (Attach copy of dispositive order)

Has a complaint been filed in this matter? (Yes or No) __No__
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____ District of _____

Is this a potential death penalty case? (Yes or No) __No__

7. Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999? _X_ Yes __ No   If yes, was it pending in the Central Region? _X_ Yes __ No

8. Did this case originate in the Narcotics Section, Miami? __Yes _X_ No

_____
ERIC I. BUSTILLO
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 831093

*Penalty Sheet(s) attached

REV.6/27/00

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PENALTY SHEET

02-20538 CR - GRAHAM

Defendant's Name: DANIEL BENDER   Case No: _____
Count: 1

Conspiracy

MAGISTRATE JUDGE
GARBER

18 U.S.C. § 371

*Max. Penalty: 5 years of imprisonment
==============================================================
Counts: 2-6

Wire Fraud

18 U.S.C. §§ 1343 & 1346

*Max. Penalty: 5 years of imprisonment
==============================================================
Count: 7

Mail Fraud

18 U.S.C. § 1341

*Max. Penalty: 5 years of imprisonment
==============================================================
Count: 8

Securities Fraud

15 U.S.C. §§ 78j(b) & 78ff(a)

*Max. Penalty: 10 years of imprisonment
==============================================================
Count:


*Max. Penalty:
==============================================================
   *Refers only to possible term of incarceration, does not
   include possible fines, restitution, special assessments,
   parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PENALTY SHEET

02-20538 CR - GRAHAM

Defendant's Name: BRUCE A. BIDDICK     Case No: _____

Count: 1

Conspiracy                                                      MAGISTRATE JUDGE
                                                                      GARBER
18 U.S.C. § 371

*Max. Penalty: 5 years of imprisonment
==========================================================
Counts: 2-6

Wire Fraud

18 U.S.C. §§ 1343 & 1346

FILED by _____ D.C.
MAG. SEC.

JUL 2 0 2002

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

*Max. Penalty: 5 years of imprisonment
==========================================================
Count: 7

Mail Fraud

18 U.S.C. § 1341

*Max. Penalty: 5 years of imprisonment
==========================================================
Count: 8

Securities Fraud

15 U.S.C. §§ 78j(b) & 78ff(a)

*Max. Penalty: 10 years of imprisonment
==========================================================
Count:

_____

_____

*Max. Penalty:
==========================================================
   *Refers only to possible term of incarceration, does not
   include possible fines, restitution, special assessments,
   parole terms, or forfeitures that may be applicable.